IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| GLOCK, INC., | ) | |
| | ) | |
|     Plaintiff, | ) | Civil Action No.:  1:14-CV-568-AT |
| | ) | |
| v. | ) | |
| | ) | |
| KENT DE-HUI WU a/k/a KENT WU a/k/a | ) | JURY TRIAL DEMANDED |
| KEAT D. WU a/k/a KENNETH WU a/k/a | ) | |
| KENNETH WILSON, MAY-FONG CHU, | ) | |
| a/k/a MAY CHU a/k/a MAY FUN CHU, | ) | |
| a/k/a MIAN CHU a/k/a MAY SCHWARZ, | ) | |
| THE WUSTER, DA WUSTER INC., DA | ) | |
| WUSTER CORP., WUSTER & CHEWY | ) | |
| LLC (California), WUSTER & CHEWY | ) | |
| LLC (Washington), THE WUSTER INC., | ) | |
| XYZ CORPORATIONS 1-10, and ABC | ) | |
| LIMITED LIABILITY COMPANIES 1-10, | ) | |

    Defendants.

## **COMPLAINT**

COMES NOW Plaintiff, GLOCK, Inc. ("GLOCK") by and through its attorneys, Miller & Martin, PLLC, for its Complaint against Defendants alleges as follows:

## PARTIES

**1.** Plaintiff GLOCK is a corporation organized and existing under the laws of the state of Georgia with its principal place of business at 6000 Highlands Parkway, Smyrna, GA 30082.

**2.** Kent De-Hui Wu a/k/a Kent Wu a/k/a Keat D. Wu a/k/a Kenneth Wu a/k/a Kenneth Wilson ("Wu") is a citizen of the state of California.

**3.** May-Fong Chu a/k/a May Chu a/k/a May Fun Chu, a/k/a Mian Chu a/k/a May Schwarz ("Chu") is a citizen of the state of California.

**4.** Wu and Chu own and operate Airsplat.com.

**5.** Wu and Chu own and operate AirSplat Los Angeles, located at 3809 Durbin Street, Irwindale, CA 91706.

**6.** Wu and Chu own and operate AirSplat Seattle, located at 120 Andover Park E # 160, Seattle, WA 98188 (AirSplat.com, AirSplat Los Angeles and AirSplat Seattle are hereinafter collectively referred to as "AirSplat").

**7.** Upon information and belief, Wu and Chu have created an elaborate system of corporate entities designed to conceal their ownership and operation of AirSplat.

**8.** Defendant The Wuster is a corporation organized and existing under the laws of the state of California with its principal place of business in California.

2

**9.**    Defendant Da Wuster Inc. was a corporation organized and existing under the laws of the state of California with its principal place of business in California.

**10.**    Defendant Wuster & Chewy LLC (California) was a limited liability company organized and existing under the laws of the state of California with its principal place of business in California.

**11.**    Defendant Wuster & Chewy  LLC (Washington) is a limited liability company organized and existing under the laws of the state of Washington, with its principal place of business in Washington.

**12.**    Defendant The Wuster Inc. is a corporation organized and existing under the laws of the state of Washington with its principal place of business in Washington.

**13.**    Da Wuster Corp is a corporation organized and existing under the laws of the state of Nevada, with its principal place of business in Nevada.

**14.**    XYZ Corporations 1-10 are additional corporations that Wu and Chu have created to conceal their ownership and operation of AirSplat, the identities of which are currently unknown to Plaintiff.

**15.**     ABC Limited Liability Companies 1-10 are additional limited liability companies that Wu and Chu have created to conceal their ownership and operation of AirSplat, the identities of which are currently unknown to Plaintiff.

**16.**     Wu and Chu are corporate officers of the limited liability company defendants.

**17.**     Defendants The Wuster,  Da Wuster Inc.,  Wuster & Chewy LLC (California), Wuster & Chewy  LLC (Washington), The Wuster Inc., Da Wuster Corp, XYZ Corporations 1-10, and ABC Limited Liability Companies 1-10 are hereinafter collectively referred to as the "AirSplat Corporate Entities."

**18.**     In marketing, selling, importing and distributing GLOCK Replicas (as hereinafter defined) into the United States, including the State of Georgia, Defendants have committed unlawful acts, including, but not limited to, patent infringement, federal trade dress infringement, federal trademark infringement, federal false designation of origin and false advertising, federal dilution, common law trade dress and trademark infringement, unfair competition, deceptive trade practices, and unjust enrichment, disgorgement and constructive trust as more fully set forth herein within the Northern District of Georgia.

4

## JURISDICTION AND VENUE

19.    This is an action for injunctive relief, damages, treble damages and an award for attorneys' fees for infringement of a patent issued by the United States Patent and Trademark Office ("USPTO") under 35 U.S.C. § 271, *et. seq.*

20.    This is also an action for injunctive relief, damages, treble damages and an award for attorneys' fees for infringement of federal trade dress registrations and federal trademark registrations under 15 U.S.C. § 1114(1)(a); trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); dilution of a famous trade dress under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); dilution of a famous trademark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); for deceptive trade practices in violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et. seq.* for unfair competition in violation of Georgia Unfair Competition Statute, O.C.G.A. § 23-2-55, *et. seq.* for unfair competition in violation of common law; and for unjust enrichment, disgorgement and constructive trust in violation of common law.

21.    This Court has subject matter jurisdiction over the patent infringement, trade dress infringement, trademark infringement, unfair

competition, false designation of origin and false advertising, and dilution pursuant to 28 U.S.C. §§ 1331 & 1338.

22.     This Court has subject matter jurisdiction over the state and common law claims pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000 exclusive of interest and costs, and pursuant to 28 U.S.C. § 1367(a).

23.     This Court has personal jurisdiction over the Defendants pursuant to the provisions of the Georgia Long Arm Statute, O.C.G.A. § 9-10-91.

24.     Venue is proper in this Court pursuant to the provisions of 28 U.S.C. §§ 1391 and § 1400(b).

<u>**FACTS COMMON TO ALL COUNTS**</u>
<u>**BACKGROUND**</u>

25.     In 1982, Gaston Glock developed the first commercially successful polymer-frame semi-automatic pistol, the GLOCK 17. It has been well publicized that the GLOCK 17 was regarded as a radically new design in virtually every respect. It revolutionized the industry. The new, unique appearance of the GLOCK 17 featured an external design and image that was a significant departure from the

6

traditional metal design widely used over the last century by other pistol manufacturers, such as Smith & Wesson, Heckler & Koch and Colt.

26. GLOCK was formed in 1985 to assemble and market the GLOCK 17 in the United States. Subsequently, Gaston Glock developed a complete family of GLOCK pistols, including the Model 17L, Model 18, Model 19, Model 20, Model 21, Model 22, Model 23, Model 24, Model 25, Model 26, Model 27, Model 28, Model 29, Model 30, Model 31, Model 32, Model 33, Model 34, Model 35, Model 36, Model 37, Model 38, Model 39, Model 41, and Model 42. The family of polymer-frame pistols is herein collectively referred to as the "GLOCK pistols." Despite some initial skepticism from gun traditionalists, the GLOCK pistols became enormously successful in the United States, with consumers and especially with law enforcement agencies. By 1991, more than 3,500 Federal, State and local law enforcement agencies and departments in the United States had adopted or approved GLOCK pistols for duty use. By 1996, GLOCK captured over one half of the United States law enforcement handgun market. GLOCK pistols are presently used by over sixty-five percent (65%) of Federal, State and local law enforcement agencies across the Country, including the Federal Bureau of Investigation, Drug Enforcement Agency, and the Federal Bureau of Prisons.

7

**27.**   Gaston Glock's original design and concept for the GLOCK 17 has stayed virtually intact for the entire line of GLOCK pistols since creation. All of the various GLOCK pistols share the same distinctive design and appearance as the original Model 17.

**28.**   GLOCK pistols feature a distinctive appearance and overall image, which represents a significant departure from the traditional pistol designs used by other pistol manufacturers. GLOCK pistols include a polymer-frame with a slide top lever built flush into one side of the frame and a small slide lock positioned in an angled groove on both sides of the frame above the trigger. The slide and the upper part of the polymer-frame on GLOCK pistols have a distinctive blocky and squared-off shape, with polymer sights carrying a white dot on the top of the slide and serrations on each side of the rear portion of the slide. The serial number plate is embedded on the underside of the front part of the frame. The interface between the slide and the frame on GLOCK pistols includes a distinctive gap. The bottom portion of the frame includes both the handgrip and trigger guard. The handgrip of GLOCK pistols includes distinctive serrations on the front and rear faces and both sides of a GLOCK pistol handgrip are slightly raised and textured. The front face of the handgrip includes two raised finger ridges. At the transition between the rear of the gun and the handgrip is a slightly projecting down-turned lip. The trigger

8

guard of a GLOCK pistol is also a blocky and squared-off shape with distinctive serrations on the front face. This previously unknown selection of non-functional design elements present an inherently distinctive appearance and have acquired secondary meaning. True and correct copies of photographs of select GLOCK model pistols are attached as **Exhibit A**.

## THE GLOCK TRADE DRESS

29.     The trade dress of GLOCK pistols has acquired a substantial level of source identifying capability, i.e., secondary meaning. This secondary meaning is the result of, among other things, the widespread popularity and use of GLOCK pistols by law enforcement agencies and civilians throughout the United States, GLOCK's extensive marketing and promotional efforts, and extensive third-party publicity.

30.     GLOCK is the owner of a federal trademark registration for its trade dress in International Class 13, Reg. No. 2,807,747 registered on January 27, 2004 by the United States Patent and Trademark Office (USPTO). A true and correct copy of the registration is attached as **Exhibit B**. The description of the mark is as follows:

> The mark consists of the three dimensional overall configuration of a semi-automatic pistol having a blocky an[d] squared-off shape as viewed from the side, the front, and the rear. The vertical lines at the rear of the

slide indicate ridges. The stippling is a feature of the mark and not intended to indicate color. The dotted lines indicate features that are not claimed as a part of the mark. Neither the shape of the notch on the rear sight nor the circular shape of the interior of the barrel are claimed as a part of the mark. The shape of the trigger guard and the shape, location, and position of the trigger safety tab are claimed as a part of the mark, but no claim is made to the shape of the trigger separate from the trigger safety tab.

Reg. No. 2,807,747 is incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. §1065 and therefore, GLOCK has the exclusive right to use its trade dress. GLOCK also holds a second incontestable trade dress registration, Reg. No. 2,807,745.

31.    Acceptance of GLOCK pistols in the marketplace was immediate, and sales of GLOCK pistols have continued to grow since their introduction. GLOCK has promoted the sale of its pistols by extensive advertising in newspapers and magazines as well as through appearances at trade shows and other events throughout the United States. Newspapers and magazines throughout the United States have included feature articles about the GLOCK pistols, and such pistols have been generally recognized in the press as the leading polymer-frame semi-automatic pistol in the worldwide market. Such articles have featured the distinctive appearance and the unique operation of GLOCK pistols. True and

10

correct copies of articles featuring or discussing GLOCK pistols from several leading handgun magazines are attached as **Exhibits C-1-C-9**.

32.     Another form of third-party publicity of GLOCK pistols has been in television and movies. For example, GLOCK pistols have been featured in movie productions such as INCEPTION, THE TOWN, THE FUGITIVE, DIE HARD II, BAD BOYS II, and TRUE LIES, and television productions such as THE SOPRANOS, 24, X-FILES, NYPD BLUE, CSI, JUSTIFIED and LAW & ORDER. Hundreds of instances of use of GLOCK pistols in film, television and video games have been compiled on the Internet Movie Firearm Database available at http://www.imfdb.org/wiki/Glock. Such widespread publicity has contributed to GLOCK pistols being among the most recognizable pistols in the world.

33.     GLOCK has developed valuable goodwill in the trade dress of the GLOCK pistols, and the relevant public, including the public within the Northern District of Georgia, have come to know, recognize and identify the distinctive look and appearance of a pistol originating from GLOCK.

34.     As a result of extensive sales, marking and promotion by GLOCK and others, the trade dress of the GLOCK pistol has become world famous.

35.     GLOCK has not licensed or granted to Defendants the authority, permission, or any other right to make, use, offer for sale, or sell a pistol that

copies or otherwise utilizes the trade dress of the GLOCK pistol or that resembles a GLOCK pistol.

## GLOCK'S TRADEMARKS

36.    In addition to its world famous trade dress, Plaintiff GLOCK holds several incontestable and world famous trademarks for its GLOCK logo, including the mark "GLOCK" (Reg. No. 1,691,390), and the mark "GLOCK PERFECTION" (Reg. No. 2,440,268). True and correct copy of Trademark Reg. No. 1,691,390 and Reg. No. 2,440,268 are attached as **Exhibits D-1 – D-2.**

37.    On February 4, 1986, Plaintiff obtained a trademark registration (Reg. No. 1,381,064) for its GLOCK logo in IC 008 for "hand-held tools, cutlery, and hand-held weapons, particularly spades, knives and bayonets," and IC 013 for "ammunition and bullets, explosives, fireworks, and hand-grenades." A true and correct copy of Trademark Reg. No. 1,381,064 is attached as **Exhibit D-3**.

38.    On October 11, 2011, Plaintiff obtained a trademark registration (Reg. No. 4,038,822) for its GLOCK logo in IC 013 for "airsoft guns." A true and correct copy of Trademark Reg. No. 4,038,822 is attached as **Exhibit D-4**.

39.    On September 11, 2012, Plaintiff obtained a trademark registration (Reg. No. 4,204,831), "Gen 4" in IC 013 for "firearms." A true and correct copy of Trademark Reg. No. 4,204,831is attached as **Exhibit D-5**.

**40.**     The trademarks for the GLOCK logo as well as for "Gen 4," are inherently distinctive, have achieved secondary meaning and enjoy global fame.

**41.**     GLOCK has not licensed or granted to Defendants the authority, permission, or any other right to make, use, offer for sale, or sell a pistol that copies or otherwise utilizes the GLOCK's trademarks.

### GLOCK'S '677 PATENT

**42.**     Separate and apart from GLOCK's world famous trade dress and trademarks, Gaston Glock is also recognized as an innovator in the field of firearm accessories, and has invented several patents for firearm accessories, including backstrap assemblies.

**43.**     On April 17, 2012, United States Patent No. 8,156,677 ("'677 Patent" or "patent-in-suit") was duly issued to Plaintiff by the USPTO for ASSEMBLIES AND FIREARMS INCORPORATING SUCH ASSEMBLIES after a full and fair examination for backstrap assemblies and firearms incorporating such assemblies to provide a wide range of solid grips for firearms, which was filed on April 15, 2010. A true and correct copy of '677 Patent is attached as **Exhibit E**.

**44.**     The '677 Patent enables marksmen to selectively mount and elongate removable backstrap to a grip of the firearm to effectively increase the size of the grip.

13

45.     The '677 Patent uses a trigger housing pin to secure the backstrap to the trigger mechanism housing and the receiver of the firearm.

46.     Plaintiff is and at all times relevant has been, the patentee and lawful owner of the '677 Patent and possesses all substantive rights and rights of recovery under the '677 Patent, including the right to sue for infringement and recover past damages.

47.     The '677 Patent is valid and enforceable up to its expiration on April 15, 2030.

48.     GLOCK has not licensed or granted to Defendants AirSplat Corporate Entities the authority, permission, or any other right to make, use, offer for sale, or sell a pistol that copies or otherwise utilizes the '677 Patent.

49.     The backstrap assembly that is the subject of the '677 Patent is a firearm accessory, and is separate and apart from GLOCK's trade dress registrations described herein.

## **DEFENDANTS' ACTIVITIES**

50.     Defendants AirSplat Corporate Entities claim to be the "Nation's Largest Airsoft Retailer" and own and operate an Internet retail store for airsoft guns at *www.airsplat.com*, through which they market and sell various airsoft guns and related products throughout the United States, including in this judicial district.

14

## DEFENDANTS' UNAUTHORIZED AND UNLICENSED USE OF GLOCK'S TRADE DRESS

**51.**     Airsoft guns fire non-metallic pellets for use in simulated combat and similar recreational sport. They are subject to federal regulation as "look-alike firearms" pursuant to 15 C.F.R. Part 1150, as well as to regulation by many states and municipalities.

**52.**     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 17 ("GLOCK 17 Replicas"), including the following airsoft guns shown on **Exhibit F-1**: (1) WE G17 Airsoft Gas Blowback Gun Tan; (2) WE G17 Airsoft Gas Blowback Gun Pistol; (3) WinGun 104 G17 Gas Airsoft Gun Pistol; (4) HFC G17 Spring Airsoft Gun Pistol; (5) HFC G17 Black/Silver Spring Airsoft Gun; (6) HFC G17 Gas Blowback Airsoft Gun Pistol; (7) KSC G17 Gas Airsoft Blowback Gun Pistol OD; (8) UHC G17 Spring Airsoft Pistol Black; (9) Army G17 Meister METAL Gas Airsoft Gun; (10) KWA ATP Airsoft Gas Blowback Gun Pistol; (11) KWA ATP Full Auto Gas Blowback Pistol; and (12) KWC G17 Airsoft Gas Blowback Gun Pistol.

**53.**     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 17L ("GLOCK 17L Replicas"), including the following airsoft guns shown on **Exhibit F-2**: (1) HFC

11806982v1

G17L G34 Spring Airsoft Gun BS; and (2) HFC G17L G34 Spring Airsoft Gun Black.

54.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 18 ("GLOCK 18 Replicas"), including the following airsoft guns shown on **Exhibit F-3**: (1) CYMA G18C Airsoft Spring Gun Pistol ZM17; (2) WE G18C Auto Airsoft Gas Blowback Gun; (3) WE G18C Airsoft Gas Blowback Gun Tan; (4) Echo1 Timberwolf Airsoft Gas GBB Gun Tan; (5) Echo1 Timberwolf Airsoft Gas GBB Gun BLK; (6) APS CO2 Action Combat Airsoft Pistol; (7) APS ACP Custom Camo CO2 Pistol Nomad; (8) APS ACP Custom Camo CO2 Pistol Mandrake; (9) APS ACP Custom Camo CO2 Pistol MCam; (10) APS ACP Custom Camo CO2 Pistol  Highland; (11) APS ACP Custom Camo CO2 Pistol ATC FG; (12) APS ACP Custom Camo CO2 Pistol ATC TN; and (13) APS ACP Custom Camo CO2 Pistol Typhon.

55.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 19 ("GLOCK 19 Replicas"), including the following airsoft guns shown on **Exhibit F-4**: (1) KSC G19 Gas Airsoft Blowback Gun Pistol; (2) WE G19 Airsoft Gas Blowback Gun Pistol; (3) WE G19 Airsoft Gas Blowback Gun Tan; (4) Echo1 Timberwolf Airsoft Gas GBB Gun Tan; (5) Echo1 Timberwolf Airsoft Gas GBB Gun BLK; (6) APS

11806982v1

CO2 Action Combat Airsoft Pistol; (7) APS ACP Custom Camo CO2 Pistol Nomad; (8) APS ACP Custom Camo CO2 Pistol Mandrake; (9) APS ACP Custom Camo CO2 Pistol MCam; (10) APS ACP Custom Camo CO2 Pistol Highland; (11) APS ACP Custom Camo CO2 Pistol ATC FG; (12) APS ACP Custom Camo CO2 Pistol ATC TN; and (13) APS ACP Custom Camo CO2 Pistol Typhon.

56.    Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 23 ("GLOCK 23 Replicas"), including the following airsoft guns shown on **Exhibit F-5**: (1) KJW G23 METAL Gas Airsoft Gun Pistol OD; (2) KSC/KWA ATP G23F Full Auto Gas Airsoft Blowback; (3) KJW G23 METAL Gas Blowback Airsoft Gun; (4) KJW G23C METAL Gas Airsoft Gun GBB OD; (5) KJW G23C METAL Gas Blowback Airsoft Gun; (6) WE G23C Airsoft Gas Blowback Gun Tan; and (7) WE G23C Airsoft Gas Blowback Gun Black.

57.    Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 26 ("GLOCK 26 Replicas"), including the following airsoft guns shown on **Exhibit F-6**: (1) CYMA Boy G26 Spring Airsoft Gun Pistol; (2) HFC G26 Spring Airsoft Gun Pistol Black; (3) HFC G26 Spring Airsoft Gun Pistol Silver; (4) HFC G26 METAL Airsoft Gas

BB Gun Pistol; (5) KSC G26C Full Auto Metal Gas Gun; (6) WE G26 Airsoft Gas Blowback Gun Black; and (7) WE G26 Airsoft Gas Blowback Gun Tan.

58.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 30 ("GLOCK 30 Replicas") including the following airsoft gun shown on **Exhibit F-7**: CYMA P698 G30 Spring Airsoft Gun Pistol.

59.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 33 ("GLOCK 33 Replica") including the following airsoft guns shown on **Exhibit F-8**: (1) WE G33 Advance Gas Blowback Pistol Black; and (2) WE G33 Advance Gas Blowback Pistol Tan.

60.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 34 ("GLOCK 34 Replicas") including the following airsoft guns shown on **Exhibit F-9**: (1) WE G34 Airsoft Gas Blowback Gun Pistol; (2) HFC G17L G34 Spring Airsoft Gun BS; and (3) HFC G17L G34 Spring Airsoft Gun Black.

61.     Among the airsoft guns that Defendants offer and sell are unlicensed and unauthorized replica copies of the GLOCK Model 35 ("GLOCK 35 Replicas") including the following airsoft gun shown on **Exhibit F-10**: WE G35 Auto Airsoft Gas Blowback Gun.

**62.**     Each of the GLOCK Replicas shown on **Exhibits F-1** to **F-10** uses a product name that includes either G17, G17L, G18, G19, G23, G26, G30, G33, G34 or G35, which in each case corresponds to the specific model of the GLOCK pistol that is being copied.

**63.**     On their website, as shown on **Exhibit G-1**, Defendants state that:

"Generally speaking, most of the more popular real-steel firearms has an Airsoft gun counterpart… Pistols such as the famed Berettas, Colts, SIGs, and Glocks… The list of Airsoft guns is quite sizeable, and growing with each passing month."

**64.**     For several of the GLOCK Replicas shown on **Exhibits F-1** to **F-10**, AirSplat includes product descriptions which either allude to, or expressly refer to, the world famous GLOCK pistols, including the following for the HFC G17 Spring Airsoft Gun Pistol:

"The G17 is one of the most highly regarded pistols in the world. This spring replica captures the look and feel of the world famous pistol. The HFC G17 is weighted to nearly match the exact weight of the actual thing. The locking slide will alert you when your magazine is empty, just like the real thing!"

**65.**     On their website, Defendants state:  "The main concern surrounding airsoft gun safety is the realistic nature of the weapons themselves. Airsoft guns are exact replicas of lethal firearms in both appearance and weight... [A]irsoft guns can easily be mistaken for real firearms," as shown on **Exhibit G-2**.

66.    Defendants offer and sell several models of airsoft guns under licenses from the manufacturers of the actual firearms which are being copied, including for example, an airsoft copy of the Colt 1911 pistol, SIG 552 Commando AEG Gun Tan and Walter P99 CO2 Blowback Pistol as shown on **Exhibit G-3, Exhibit G-4 and Exhibit G-5**, but has no license from GLOCK to make, use, offer for sale, or sell any of the GLOCK Replicas.

67.    On their website, Defendants tout that they have supplied airsoft pistols for use in films and television shows as stand-ins for the firearms from which they are copied, including several of the GLOCK Replicas, as shown on **Exhibit G-6**.

68.    On their website, as shown on **Exhibit G-6**, Defendants state that:

"Often, people would watch movies and TV and say, "Wow, that gun is awesome, I'd like to get me one of those". Actually, what you may be seeing in those movies and TV shows, ARE, in fact, Airsoft guns. Due to their relatively cheap price tags and precise realism, movie studios often employ Airsoft guns for it's production work. They simply digitally alter the images to incorporate the muzzle flash, sound and effects to mimic the real firearms."

69.    AirSplat resellers, and reviewers of AirSplat products, describe GLOCK Replicas as copies of the world famous GLOCK pistols, examples of which are attached as **Exhibit G-7**.

20

**70.** On another website, as shown on **Exhibit G-8**, one reviewer of the KJW G23 METAL Gas Blowback Airsoft Gun states that: "this is the best glock i [*sic*] have ever shot."

**71.** Upon information and belief, Defendant Wu, the Chief Executive Officer, President and Founder of the AirSplat Corporate Entities, knew that one or more of the GLOCK Replicas referenced herein were unlicensed and unauthorized copies of the world famous GLOCK pistols and were being marketed by the AirSplat Corporate Entities in a manner intended to cause market confusion and in violation of GLOCK's registered trade dress and legally protected rights.

**72.** Defendant Wu was a moving, active and conscious force behind the unlawful advertising and sales activities described herein.

**73.** Upon information and belief, Defendant Chu, the Vice President of the AirSplat Corporate Entities, knew that one or more of the GLOCK Replicas referenced herein were unlicensed and unauthorized copies of the world famous GLOCK pistols and were being marketed by the AirSplat Corporate Entities in a manner intended to cause market confusion and in violation of GLOCK's registered trade dress and legally protected rights.

**74.** Defendant Chu was a moving, active and conscious force behind the unlawful advertising and sales activities described herein.

11806982v1

## DEFENDANTS' UNAUTHORIZED AND UNLICENSED USE OF GLOCK'S TRADEMARKS

**75.**   Defendants advertise and offer for sale numerous GLOCK Replicas that utilize GLOCK's registered trademarks.

**76.**   Among the airsoft guns, which Defendants advertise, offer for sale and sell on their website, are the WE G17 Airsoft Gas Blowback Gun Pistol, and the KSC G19 Gas Airsoft Blowback Gun Pistol as shown on **Exhibit H-1.**

**77.**   Each of the aforementioned GLOCK Replicas utilizes GLOCK's trademarks in violation of its intellectual property rights.

**78.**   The WE G17 Airsoft Gas Blowback Gun Pistol prominently features GLOCK's federally registered logo at the front end of the pistol slide, adjacent to "17"; a reference to the GLOCK Model 17 pistol. The grip of the pistol prominently features GLOCK's federally registered trademark, "Gen 4" in the middle of the grip's stippling. The GLOCK logo can be found on the back of the grip, and on both interchangeable backstraps included separately from the airsoft pistol as shown on **Exhibit H-2.**

**79.**   The KSC G19 Gas Airsoft Blowback Blowback Gun Pistol prominently features GLOCK's federally registered logo at the front of the slide, adjacent to the number, "19"; a reference to the GLOCK Model 19 pistol. Defendants have deceptively concealed this infringement by placing black

22

electrical tape over both the GLOCK logo and "19." This tape can easily be removed by customers as shown on **Exhibit H-3.**

**80.**　　Defendants have attempted to deceive Customs and Border Protection by shipping airsoft pistols in unmarked boxes. These boxes are either white or plain cardboard and are inverted such that all advertisements pertaining to the products and all references to GLOCK pistols, i.e. G series, G Series 17 and G 19, are featured on the interior of the boxes as shown on **Exhibit H-4.**

**81.**　　Defendants are not and have never been, associated with, endorsed by or authorized by GLOCK to use the GLOCK logo or the "Gen 4" trademarks for commercial profit.

**82.**　　Defendants' use of GLOCK's trademarks have been and continues to be intentional and in bad faith.

**83.**　　Upon information and belief, Defendant Wu, the Chief Executive Officer, President and Founder of the AirSplat Corporate Entities, knew that one or more of the GLOCK Replicas referenced herein, infringed on Plaintiff's trademarks by prominently displaying Plaintiff's famous GLOCK logo and the "Gen 4" trademark on the GLOCK Replicas, and were being marketed by the AirSplat Corporate Entities in a manner intended to cause market confusion and in violation of GLOCK's registered trademarks and legally protected rights.

**84.** Defendant Wu was a moving, active and conscious force behind the unlawful advertising and sales activities described herein.

**85.** Upon information and belief, Defendant Chu, the Vice President of the AirSplat Corporate Entities, knew that one or more of the GLOCK Replicas referenced herein infringed on Plaintiff's trademarks by prominently displaying Plaintiff's famous GLOCK logo and the "Gen 4" trademark on the GLOCK Replicas, and were being marketed by the AirSplat Corporate Entities in a manner intended to cause market confusion and in violation of GLOCK's registered trademarks and legally protected rights.

**86.** Defendant Chu was a moving, active and conscious force behind the unlawful advertising and sales activities described herein.

## DEFENDANTS' INFRINGEMENT OF '677 PATENT

**87.** Defendants AirSplat Corporate Entities have been selling and distributing firearm accessory products known as backstrap assemblies and firearms incorporating such assemblies, and have been advertising and selling such instruments and devices without consent or license of Plaintiff.

**88.** Among the airsoft guns that Defendants AirSplat Corporate Entities offer and sell are pistols that utilize backstrap assemblies and infringe on '677 Patent ("GLOCK Backstrap Replicas"), including the following airsoft guns shown

on **Exhibit I**: (1) WE G17 Airsoft Gas Blowback Gun Pistol; (2) KWA ATP Airsoft Gas Blowback Gun Pistol; (3) KWA ATP Full Auto Gas Blowback Pistol; (4) WE G18C Auto Airsoft Gas Blowback Gun; (5) WE G18C Airsoft Gas Blowback Gun Tan; (6) Echo1 Timberwolf Airsoft Gas GBB Gun Tan; (7) Echo1 Timberwolf Airsoft Gas GBB Gun BLK; (8) WE G19 Airsoft Gas Blowback Gun Pistol; (9) WE G23C Airsoft Gas Blowback Gun Tan; (10) WE G23C Airsoft Gas Blowback Gun Black; (11) WE G34 Airsoft Gas Blowback Gun Pistol; and (12) WE G35 Auto Airsoft Gas Blowback Gun.

89.     Defendants AirSplat Corporate Entities have no U.S. Patents for their firearm accessory products known as backstrap assemblies.

90.     Plaintiff has not licensed or granted to Defendants AirSplat Corporate Entities the authority, permission, or any other right to make, use, offer for sale, or sell a backstrap assembly that infringe said '677 Patent.

## COUNT I

## Infringement of GLOCK's '677 Patent

91.     Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-90 above as if fully set forth herein.

92.     Defendants AirSplat Corporate Entities have infringed, either literally and/or under the doctrine of equivalents, on one or more claims of the '677 Patent

by making, using, providing, importing, offering to sell, and selling in this district and elsewhere in the United States, pistols incorporating the patented backstrap assemblies, including, but not limited to, GLOCK Backstrap Replicas shown on **Exhibit I** .

93.     Defendants AirSplat Corporate Entities have also contributed to the infringement of one or more claims of the '677 Patent and/or actively induced others to infringe, either literally and/or under the doctrine of equivalents, on one or more claims of the '677 Patent, in this district and elsewhere in the United States, pistols incorporating the patented backstrap assemblies, including, but not limited to, GLOCK Backstrap Replicas shown on **Exhibit I.**

94.     Defendants AirSplat Corporate Entities' aforesaid activities have been with notice and knowledge of the '677 Patent without authority and/or license from Plaintiff, and are thus willful and deliberate.

95.     Plaintiff is entitled to recover from Defendants AirSplat Corporate Entities the damages sustained by Plaintiff as a result of Defendants AirSplat Corporate Entities' wrongful acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**96.**     This case is "exceptional" within the meaning of 35 U.S.C. § 285 and Plaintiff is entitled to an award of attorneys' fees.

**97.**     Defendants AirSplat Corporate Entities' infringement of Plaintiff's exclusive rights under the '677 Patent damaged Plaintiff causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT II

### Infringement of GLOCK's Federally Registered Trade Dress

**98.**     Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-97 above as if fully set forth herein.

**99.**     By marketing and selling GLOCK Replicas, Defendants have infringed Plaintiff GLOCK's registered trade dress in the GLOCK pistols. Defendants' aforesaid acts falsely represent that Defendants are affiliated, connected or associated with Plaintiff GLOCK and tend to describe falsely that Defendants' goods emanate from or are sponsored or approved by GLOCK.

**100.**     Defendants have willfully promoted their business in interstate commerce and intentionally traded upon GLOCK's reputation and goodwill, thereby causing confusion or mistake or deception among purchasers as to the true origin, source, sponsorship, or affiliation of the Defendants' goods, all to the Defendants' profit and to GLOCK's monetary damage. GLOCK has been, and will

11806982v1

continue to be, irreparably damaged by Defendants' use of such confusingly similar trade dress.

**101.**   Defendants' acts, as set forth above, violate GLOCK's rights in its registered trade dress pursuant to 15 U.S.C. § 1114(1).

**102.**   If not enjoined by this Court, Defendants will continue their acts of trade dress infringement as set forth above, which acts have caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

**103.**   As a result of Defendants' infringement of GLOCK's registered trade dress, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117-1118, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all GLOCK Replicas and all means of marketing, selling or making same.

## COUNT III

### Infringement of GLOCK's Federally Registered Trademarks: Lanham Act §§ 32

**104.**   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-103 above as if fully set forth herein.

**105.**   By marketing and selling GLOCK Replicas that prominently display Plaintiff's famous GLOCK logo and the "Gen 4" trademark, Defendants' aforesaid acts falsely represent that Defendants are affiliated, connected or associated with Plaintiff GLOCK and tend to describe falsely that Defendants' goods emanate from or are sponsored or approved by GLOCK.

**106.**   Defendants' have willfully promoted their business in interstate commerce and intentionally traded upon GLOCK's reputation and goodwill, thereby causing confusion or mistake or deception among purchasers as to the true origin, source, sponsorship, or affiliation of the Defendants' goods, all to the Defendants' profit and to GLOCK's monetary damage. GLOCK has been, and will continue to be irreparably damages by Defendants' use of GLOCK's trademarks.

**107.**   Defendants' acts as set forth above, violate GLOCK's rights in its registered trademark pursuant to 15 U.S.C. § 1114(a) and/or §1125(a).

**108.**   If not enjoined by this Court, Defendants will continue their trademark infringement as set forth above, which acts have caused, and will

continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

**109.** As a result of Defendants' infringement of GLOCK's registered trademarks, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117-1118, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all GLOCK Replicas and all means of marketing, selling or making same.

## COUNT IV

### Federal Unfair Competition: Violation of Section 43(a) of the Lanham Act

**110.** Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-109 above as if fully set forth herein.

**111.** By marketing and selling GLOCK Replicas and/or prominently displaying Plaintiff's famous GLOCK logo and the "Gen 4" trademark on the GLOCK Replicas, Defendants have misappropriated Plaintiff GLOCK's trade dress and trademarks in the GLOCK pistols. Defendants' aforesaid acts falsely represent that Defendants are affiliated, connected or associated with Plaintiff

30

GLOCK and tend to describe falsely that Defendants' goods emanate from or are sponsored or approved by GLOCK, all of which constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

112.   Defendants' unauthorized use of the GLOCK trade dress and trademarks are willful and intentional.

113.   If not enjoined by this Court, Defendants will continue its acts of unfair competition in the unauthorized use of the GLOCK trade dress and trademarks, which acts have caused, and will continue to cause, GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

114.   As a result of Defendants' acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117 and 1118, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all GLOCK Replicas and all means of marketing, selling or making same.

**COUNT V**

## **False Designation of Origin and False Advertising: Violation of Section 43(a) of the Lanham Act**

**115.** Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-114 above as if fully set forth herein.

**116.** By marketing, selling and advertising GLOCK Replicas and/or prominently displaying Plaintiff's famous GLOCK logo and the "Gen 4" trademark on the GLOCK Replicas, Defendants have made misleading misrepresentations of fact, which are likely to cause confusion or to deceive the consuming public as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship or approval of Defendants' products and business activities by Plaintiff.

**117.** Defendants' use and commercial advertising of Plaintiff's trade dress and trademarks misrepresents the nature, characteristics, qualities, or geographic origin of Defendants' goods, services and commercial activity. This wrongful act relates to the interstate marketing of Defendants' infringing products.

**118.** Defendants were and still are aware that such representations were misleading, partially incorrect or false, and regardless, Defendants have failed and still continues to fail to disclose material facts regarding the origin of the GLOCK Replicas. Such actions have caused actual confusion, will be likely to cause actual

confusion, or have, at least, a tendency to confuse a substantial portion of the consuming public, and are likely to affect purchasing decisions.

119.   Defendants' acts of false advertising and designation of origin have caused irreparable damage. Pursuant to 15 U.S.C. §§ 1117, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendant turn over to GLOCK for destruction all GLOCK Replicas and all means of marketing, selling or making same.

## COUNT VI

## Federal Trade Dress Dilution: Violation of Section 43(c) of the Lanham Act

120.   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-119 above as if fully set forth herein.

121.   As a result of the actions set forth herein, Defendants have, without the consent of GLOCK, used a trade dress in commerce, which dilutes the distinctive quality of GLOCK's famous trade dress. Such use by Defendants began after GLOCK's trade dress became famous, and is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

122.   Defendants' acts of trade dress dilution are willful and intentional.

33

123.   If not enjoined by this Court, Defendants will continue their acts of trade dress dilution, which acts have caused, and will continue to cause GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1125(c)(1) and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

124.   As a result of Defendants' acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all GLOCK Replicas and all means of marketing, selling or making same.

## COUNT VII

### Federal Trademark Dilution: Violation of Section 43(c) of the Lanham Act

125.   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-124 above as if fully set forth herein.

126.   As a result of the actions set forth herein, Defendants have, without the consent of GLOCK, used trademarks in commerce, which dilute the distinctive quality of GLOCK's famous trademark. Such use by Defendants began after

GLOCK's trademarks became famous, and is in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**127.**   Defendants' acts of trademark dilution are willful and intentional.

**128.**   If not enjoined by this Court, Defendants will continue their acts of trademark dilution, which acts have caused, and will continue to cause GLOCK immediate and irreparable harm. Pursuant to 15 U.S.C. § 1125(c)(1) and Fed. R. Civ. P. 65(a), GLOCK is entitled to an Order of this Court enjoining Defendants' unlawful activities. GLOCK has no adequate remedy at law.

**129.**   As a result of Defendants' acts of unfair competition, GLOCK has been, and continues to be, irreparably damaged. Pursuant to 15 U.S.C. §§ 1117, GLOCK is entitled to a judgment for: (1) Defendants' profits; (2) damages sustained by GLOCK; (3) treble damages; (4) such sum as the Court deems just; (5) GLOCK's attorneys' fees; (6) GLOCK's costs of this action; (7) interest; and (8) an order that Defendants turn over to GLOCK for destruction all GLOCK Replicas that prominently display Plaintiff's famous GLOCK logo and the "Gen 4" trademark on the GLOCK Replicas and all means of marketing, selling or making same.

## COUNT VIII

## Deceptive Trade Practices: Violation of Georgia Law

**130.** Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-129 above as if fully set forth herein.

**131.** Defendants, by the aforesaid acts, have engaged in conduct that creates confusion and misunderstanding as to the source, sponsorship, approval or certification of the GLOCK Replicas, which acts constitute deceptive trade practices in Georgia.

**132.** Defendants' aforesaid acts in the course of its business are in violation of Sections 10-1-370 *et seq*., including Sections 10-1-372 of the Official Code of Georgia Annotated ("O.C.G.A.").

**133.** As a result of Defendants' deceptive trade practices in Georgia, Defendants have monetarily profited, and GLOCK has been monetarily damaged by Defendants' aforesaid acts.

**134.** As a result of Defendants' willful and intentional deceptive trade practices in Georgia, GLOCK is entitled to recover its damages, costs and attorneys' fees, and if not enjoined, GLOCK will continue to suffer irreparable harm to its goodwill and reputation.

**COUNT IX**

**<u>Unfair Competition: Violation of Georgia Unfair Competition Statute</u>**

**135.**   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-134 above as if fully set forth herein.

**136.**   Defendants' use of GLOCK's trade dress and trademarks constitutes an attempt to encroach upon the business of GLOCK by the use of a similar name, with the intention of deceiving and misleading the public, and therefore violates the Georgia Unfair Competition Statute, O.C.G.A. § 23-2-55.

**137.**   As a result of Defendant's wrongful acts, Defendants obtained the benefit of, and traded on, the goodwill of Plaintiff GLOCK, which caused and is likely to continue to cause confusion, mistake or deception of the public, and will cause damage to GLOCK's goodwill.

**138.**   Unless enjoined by this Court, the aforesaid acts of Defendants have irreparably damaged Plaintiff GLOCK, and will continue to irreparably damage GLOCK.

**139.**   As a result of Defendants' unfair competition in Georgia, GLOCK is entitled to recover its damages, costs and attorneys' fees.

## COUNT X

### Unfair Competition: Violation of Georgia Law

**140.**   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-139 above as if fully set forth herein.

11806982v1

**141.**   By misappropriating GLOCK's trade dress and trademarks in the GLOCK Replicas, the aforesaid acts of Defendants constitute unfair competition in violation of the common law of the state of Georgia.

**142.**   As a result of Defendant's wrongful acts, Defendants obtained the benefit of, and traded on, the goodwill of Plaintiff GLOCK, which caused and is likely to continue to cause confusion, mistake or deception of the public, and will cause damage to GLOCK's goodwill.

**143.**   Unless enjoined by this Court, the aforesaid acts of Defendants have irreparably damaged Plaintiff GLOCK, and will continue to irreparably damage GLOCK.

**144.**   As a result of Defendants' unfair competition in Georgia, GLOCK is entitled to recover its damages, costs and attorneys' fees.

## COUNT XI

### Unjust Enrichment, Disgorgement and Constructive Trust: Violation of Georgia Law

**145.**   Plaintiff GLOCK reasserts, realleges and incorporates herein by reference Paragraphs 1-144 above as if fully set forth herein.

**146.**   Defendants have, upon information and belief, generated and enjoyed, or will generate and enjoy, substantial profits and goodwill as a result of the wrongful conduct alleged above. Defendants, upon information and belief, are

aware of the profits and goodwill they have enjoyed as a result of its use of Plaintiff's trade dress and trademarks.

147.  It would be unjust to allow Defendants to retain benefits and profits derived from its wrongful use of Plaintiff's trade dress and trademarks.

148.  As a result of Defendants' wrongful acts, GLOCK has been, and continues to be, irreparably damaged, and Defendants have been and continue to be unjustly enriched through increased profits for the use of Plaintiff's trade dress and trademarks from AirSplat's wrongful conduct accumulates.

149.  To the extent of Defendants' unjust enrichment, Plaintiff is entitled to an accounting of all wrongfully derived profits and is entitled to the imposition of a constructive trust over all property or money in Defendants' control or possession as a result of its wrongful conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff GLOCK, Inc. demands a trial by jury of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, GLOCK, Inc. prays for the following relief against the Defendants:

1.      That Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined and restrained:

    a.   From any further infringement or violation of Plaintiff's '677 Patent;

    b.   From using the GLOCK, Inc. registered trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, airsoft pistol, replica pistol, or other product, not associated with GLOCK, Inc.;

    c.   Using any reproduction, counterfeit, copy or colorable imitation of the GLOCK, Inc. trade dress in connection with the advertising, promotion, offering for sale, or sale of any pistol, airsoft pistol, replica pistol, or other product, not associated with GLOCK, Inc.;

    d.   From using GLOCK's federally registered trademarks in marketing, advertising, or selling of any pistol, airsoft pistol, replica pistol, or other product not associated with GLOCK, Inc.;

    e.   From selling any pistol, airsoft pistol, replica pistol or other product not associated with GLOCK, Inc. that bares GLOCK's intellectual property on the product itself.;

f. Employing any words, symbols, or conduct that suggest Defendants' products are authorized, sponsored, endorsed or approved by, or otherwise suggesting any connection between Defendants and GLOCK, Inc.;

g. Engaging in false designation of origin, false descriptions, false advertising, false representations, or from otherwise engaging in unfair or deceptive or otherwise competing unfairly with GLOCK, Inc.;

h. Engaging in conduct that dilutes the distinctive quality of GLOCK Inc.'s trade dress; and

i. Making any description of representation, including by words or symbols, that Defendants' products are in any way affiliated, associated, authorized, sponsored, endorsed or otherwise connected with GLOCK, Inc.

2. That Defendants be ordered to turn over to GLOCK, Inc. for destruction all airsoft pistols, replica pistols, signs, prints, print material, advertisements, and other representations and means for reproducing the same, in its possession, custody or control bearing the trade dress and/or trademark of GLOCK, Inc., or any colorable imitation thereof, and to obliterate, destroy, or

41

remove all other uses or designations confusingly similar to GLOCK, Inc.'s trade dress and/or trademark.

3.      That Defendants be directed to file with the Court and serve on GLOCK, Inc., no later than thirty (30) days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

4.      That an accounting be conducted and judgment be rendered against Defendants for:

      a.  All profits received by Defendants, directly or indirectly, from their sales and/or advertising of any product(s) bearing GLOCK, Inc.'s trade dress or any trade dress confusingly similar thereto;

      b.  All profits received by Defendants, directly or indirectly, from their sales and/or advertising of any product(s) bearing GLOCK, Inc.'s trademark(s), or any trademark confusingly similar thereto;

      c.  All damages sustained by GLOCK, Inc. on account of, *inter alia*, Defendants' trade dress infringement, trademark infringement, unfair competition, false designation of origin, false description or representation, injury to GLOCK, Inc.'s business reputation and goodwill, and/or dilution of GLOCK, Inc.'s trade dresses and

42

trademarks pursuant to 15 U.S.C. § 1117 *et. seq*., Defendants'
deceptive trade practices pursuant to O.C.G.A. § 10-1-370, *et. seq*.,
and Defendants' unfair competition pursuant to O.C.G.A. § 23-2-
55, *et. seq*., and Georgia law; and

d.  Actual compensatory damages in an amount not presently known,
but to be computed during the pendency of this action.

5.    That the actual damages assessed against Defendants be enhanced as
provided by 15 U.S.C. § 1117.

6.    That Defendants be required to pay GLOCK, Inc., all economic
compensatory damages attributable to the infringement including all actual
damages suffered by reason of Defendants' wrongful manufacture, importation,
sale and offer of sale of products infringing upon the '677 Patent of Plaintiff and
all profits of the Defendants derived therefrom pursuant to 35 U.S.C. § 284.

7.    That Defendants be required to pay to GLOCK, Inc. monetary
damages to be used for corrective advertising to be conducted by GLOCK, Inc.

8.    That GLOCK, Inc. has and recovers its costs in this suit, including its
reasonable attorneys' fees and expenses.

9.    This case is declared to be exceptional and awarding the Plaintiff its
reasonable attorneys' fees and costs in bringing the action, under 35 U.S.C. § 285.

10.     That GLOCK, Inc. has and recovers pre-judgment and post-judgment interest on all damages at the maximum allowable rate.

11.     That GLOCK, Inc. has such other and further relief as the Court may deem just, equitable and proper.

Dated:  Atlanta, Georgia
          February 26, 2014

By:*/s/ Christopher E. Parker*
Christopher E. Parker
Georgia Bar No. 562152
Kelly L. Whitehart
Georgia Bar No. 755447
**MILLER & MARTIN PLLC**
1170 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
Telephone:  (404) 962-6100
Facsimile:  (404) 962-6300

– and –

John F. Renzulli (*pro hac vice* to be filed)
Nicole A. Spence (*pro hac vice* to be filed)
Julianna E. Orgel (*pro hac vice* to be filed)
**RENZULLI LAW FIRM, LLP**
81 Main Street, Suite 508
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile:  (914) 285-1213

*Attorneys for Plaintiff GLOCK, Inc.*

## <u>LR 7.1(D), NDGa. CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief was prepared with one of the font (Times New Roman) and point (at least 14 point) selections approved by the Court in LR 5.1C, NDGa.

This 26th day of February, 2014.

By: <u>*/s/ Christopher E. Parker*</u>
Christopher E. Parker
Georgia Bar No. 562152
Kelly L. Whitehart
Georgia Bar No. 755447
**MILLER & MARTIN PLLC**
1170 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309
Telephone:  (404) 962-6100
Facsimile:  (404) 962-6300

– and –

John F. Renzulli (*pro hac vice* to be filed)
Nicole A. Spence (*pro hac vice* to be filed)
Julianna E. Orgel (*pro hac vice* to be filed)
**RENZULLI LAW FIRM, LLP**
81 Main Street, Suite 508
White Plains, NY 10601
Telephone: (914) 285-0700
Facsimile:  (914) 285-1213

*Attorneys for Plaintiff GLOCK, Inc.*

11806982v1

## Index of Exhibits

Exhibit A          Photographs of selected GLOCK model pistols

Exhibit B          Trademark Reg. No. 2,807,747

Exhibit C          Copies of Articles on GLOCK Pistols from Several Leading
                   Handgun Magazines

Exhibit D-1        Trademark Reg. No. 1,691,390

Exhibit D-2        Trademark Reg. No. 2,440,268

Exhibit D-3        Trademark Reg. No. 1,381,064

Exhibit D-4        Trademark Reg. No. 4,038,822

Exhibit D-5        Trademark Reg. No. 4,204,831

Exhibit E          Patent Reg. No. 8,156,677

Exhibit F-1        Unauthorized Replica of GLOCK Model 17

Exhibit F-2        Unauthorized Replica of GLOCK Model 17L

Exhibit F-3        Unauthorized Replica of GLOCK Model 18

Exhibit F-4        Unauthorized Replica of GLOCK Model 19

Exhibit F-5        Unauthorized Replica of GLOCK Model 23

Exhibit F-6        Unauthorized Replica of GLOCK Model 26

Exhibit F-7        Unauthorized Replica of GLOCK Model 30

Exhibit F-8        Unauthorized Replica of GLOCK Model 33

11806982v1

Exhibit F-9          Unauthorized Replica of GLOCK Model 34

Exhibit F-10         Unauthorized Replica of GLOCK Model 35

Exhibit G-1          Image of AirSplat's Website

Exhibit G-2          Image of AirSplat's Website

Exhibit G-3          Airsoft Copy of Colt 1911 Pistol

Exhibit G-4          Airsoft Copy of SIG 552 Commando AEG Gun Tan

Exhibit G-5          Airsoft Copy of Walter P99 CO2 Blowback Pistol

Exhibit G-6          Image of AirSplat's Website

Exhibit G-7          Images of AirSplat's Website

Exhibit G-8          Review of KJW G23 METAL Gas Blowback Airsoft Gun

Exhibit H-1          Images of AirSplat's Website

Exhibit H-2          Images of WE G17 Airsoft Gas Blowback Gun Pistol

Exhibit H-3          Images of KSC G19 Gas Airsoft Blowback Gun Pistol

Exhibit H-4          Images of Boxes and Related Shipping Materials From Airsoft
                     Pistols

Exhibit I            Unauthorized GLOCK Replicas that Infringe on '677 Patent